## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 20-32465 |
| **BOS SOLUTIONS LTD.** | § | |
| | § | Chapter 15 |
| Debtor in a foreign proceeding. | § | |
| | § | Joint Administration Requested |
| | § | |
| In re: | § | |
| | § | Case No. 20-32467 |
| **BOS SOLUTIONS INC.** | § | |
| | § | Chapter 15 |
| Debtor in a foreign proceeding. | § | |
| | § | Joint Administration Requested |
| | § | |
| In re: | § | |
| | § | Case No. 20-32468 |
| **BOS LEASECO LLC** | § | |
| | § | Chapter 15 |
| Debtor in a foreign proceeding. | § | |
| | § | Joint Administration Requested |
| | § | |
| In re: | § | |
| | § | Case No. 20-32469 |
| **BOS SOLUTIONS REAL ESTATE INC.** | § | |
| | § | Chapter 15 |
| Debtor in a foreign proceeding. | § | |
| | § | Joint Administration Requested |
| | § | |
| In re: | § | |
| | § | Case No. 20-32470 |
| **BOS USHOLDCO INC.** | § | |
| | § | Chapter 15 |
| Debtor in a foreign proceeding. | § | |
| | § | Joint Administration Requested |
| | § | |

**EMERGENCY PETITION FOR RECOGNITION AS FOREIGN MAIN
PROCEEDINGS, OR ALTERNATIVELY AS FOREIGN NONMAIN PROCEEDINGS,
PURSUANT TO SECTIONS 1515 AND 1517 OF THE UNITED STATES
BANKRUPTCY CODE AND RELATED RELIEF**

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU
> OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING
> PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT
> AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.
> YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS
> WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD
> NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE
> GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND
> HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS
> THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE
> HEARING AND MAY DECIDE THE MOTION AT THE HEARING.
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**
>
> **EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE
> MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO
> ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR YOU BELIEVE THE
> EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN
> IMMEDIATE RESPONSE.**

Ernst & Young Inc. ("EY") solely in its capacity as court-appointed receiver (the

"Receiver") of (1) BOS Solutions Ltd. ("BOS Ltd."), (2) BOS Solutions Inc. ("BOS Inc."), (3)

BOS Leaseco LLC ("BOS Leaseco"), (4) BOS Solutions Real Estate Inc. ("BOS Real Estate"),

and (5) BOS USHoldco Inc. ("BOS Holdco") (collectively, "BOS" or the "Debtors") based upon

the Receivership Order dated May 4, 2020 (the "Receivership Order"), entered by the Court of

Queen's Bench of Alberta in the Judicial Centre of Calgary, Canada, Court File No. 2001-05949

(the "Canadian Court" and the "Canadian Proceedings"), and as authorized foreign representative

of the above-captioned Debtors, by and through its undersigned counsel, respectfully files the

official form petition and this petition (together, the "Petition") pursuant to section 1515 of title 11

of the United States Code (the "Bankruptcy Code") for entry of an order recognizing the Canadian

Proceedings as foreign main proceedings pursuant to section 1517 of the Bankruptcy Code,

thereby granting related relief pursuant to section 1520 of the Bankruptcy Code and additional

relief pursuant to section 1521 of the Bankruptcy Code. In the alternative, should the Court not recognize the Canadian Proceedings as foreign main proceedings (either in whole or in part), the Receiver seeks recognition of the Canadian Proceedings as foreign nonmain proceedings, as defined in section 1502(5) of the Bankruptcy Code, and seeks additional relief available under section 1521 of the Bankruptcy Code.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a) and (b) and sections 109 and 1501 of the Bankruptcy Code.  Venue is proper in this district pursuant to 28 U.S.C. § 1410. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

## INTRODUCTION

2.      The Debtors are a group of Canadian-owned companies that are engaged in the business of providing customizable and scalable liquids-solids separation in western Canada and the United States. Such services are provided to the oilfield services industry and to other industrial undertakings including construction.  The Debtors' structure is as follows: (1) BOS Ltd. is a Canadian corporation that conducts the Debtors' Canadian operations, is the owner of all equipment used in the Debtors' operations, and the ultimate parent company of BOS Inc., BOS Leaseco, BOS Real Estate, and BOS Holdco; (2) BOS Inc. is a Colorado corporation headquartered in Houston, Texas that conducts the Debtors' U.S. operations; (3) BOS Leaseco is a Delaware limited liability company that owns and rents out the field assets and equipment to BOS Inc.; (4) BOS Real Estate is a Colorado corporation that owns or leases the U.S. based real estate assets or rental properties used by BOS Inc. in the performance of its U.S. operations; and (5) BOS Holdco is a Delaware corporation that owns and holds the investment in BOS Ltd. BOS Ltd. and BOS Inc. are borrowers, and BOS Leaseco, BOS Real Estate, and BOS Holdco are guarantors, under a loan from a Canadian lender group agented by the National Bank of Canada ("NBC") in the amount of

approximately U.S. $38 million and CA $6 million, with security interests claimed on essentially all assets of the Debtors ("Canadian Credit Agreement") (as more fully defined below). The Canadian Credit Agreement has been, and continues to be, in default.

3.     On May 4, 2020, the Debtors were placed into a receivership proceeding under section 243 of the Canadian Bankruptcy and Insolvency Act, RSC 1985 c B-3 (the "BIA") and section 13(2) of the Judicature Act, RSA 2000 c J-2.

4.     In addition to seeking recognition of the Canadian Proceedings as foreign main proceedings, the Receiver also seeks certain injunctive relief pursuant to 11 U.S.C. §§ 1519 and 1521 to protect the Debtors and their assets and creditors.

5.     On May 4, 2020, all the Debtors' directors resigned leaving the Receiver with sole management powers over the Debtors.  Pursuant to the Receivership Order, the Receiver is authorized to, among other things, "manage, operate and carry on the business of the Debtors." (Receivership Order, § 3(c)). The Receiver intends to continue to operate the Debtors for a reasonable time and ultimately sell the Debtors' assets as a going concern.  As such, the Receiver seeks the Chapter 15 relief requested herein.

## SUPPORT FOR THIS MOTION

6.     The Receiver attaches the following Exhibits to this Petition.

| Exhibit | Description | Comment |
|---------|-------------|---------|
| A | Form of Order Granting Emergency Petition for Recognition as Foreign Main Proceeding Pursuant to Sections 1515 and 1517 of the United States Bankruptcy Code and Related Relief | |

7.     The Receiver also requests that the Court take judicial notice of its files in this case, and relies upon the *Witness and Exhibit List in Support of First Day Motions* (the "Exhibits List"),[1]

---

[1] The Exhibits List and all exhibits thereto are incorporated into this Petition by reference for all purposes as if fully set forth at length.

and the *Declaration of Receiver in Support of (A) Receiver's Emergency Ex Parte Application for Temporary Restraining Order and Relief Pursuant to Sections 105(a) and 1519 of the Bankruptcy Code, and (B) Emergency Petition for Recognition as Foreign Main Proceedings, or Alternatively as Foreign Nonmain Proceedings, Pursuant to Sections 1515 and 1517 of the United States Bankruptcy Code and Related Relief*, both filed contemporaneously herewith.

## BACKGROUND

**A.    The Structure of the Debtors**

8.    There are five (5) entities that are chapter 15 debtors, one (1) of which is a Canadian entity, and four (4) of which are either a direct or indirect subsidiary of the Canadian entity.  The Debtors are described below.

**B.    Canadian Entity**

9.    BOS Ltd., which is the ultimate direct or indirect parent entity of the other Debtors, is a corporation incorporated pursuant to the provisions of the Business Corporations Act (British Columbia) with a registered office located in the City of Vancouver. BOS Ltd. carries on business in Alberta and is extra-provincially in the Province of Alberta.

**C.    U.S. Subsidiaries**

10.    BOS Real Estate is a corporation incorporated pursuant to the laws of the State of Colorado, United States, with an office in Houston, Texas.  BOS Real Estate is a wholly owned subsidiary of BOS Ltd.

11.    BOS Holdco is a corporation incorporated pursuant to the laws of the State of Delaware, United States, with a registered office located in the State of Delaware.  BOS Holdco is a wholly owned subsidiary of BOS Ltd.

12.     BOS Inc. is a corporation incorporated pursuant to the laws of the State of Colorado, United States, with an office in Houston, Texas.  BOS Inc. is a wholly owned subsidiary of BOS Holdco.

13.     BOS Leaseco is a corporation incorporated pursuant to the laws of the State of Delaware, United States, with a registered office located in the State of Delaware.  BOS Leaseco is a wholly owned subsidiary of BOS Inc.

### D.     Business Operations of the Debtors

14.     The Debtors are engaged in the business of providing customizable and scalable liquids-solids separation in western Canada and the United States. Such services are provided to the oilfield services industry and to other industrial undertakings including construction.  In the energy industry, the Debtors provide a proprietary process that is designed to significantly reduce the costs associated with drilling oil and gas wells by recycling the drilling fluid that is continuously used in the drilling process and reducing the volume of drilling waste for disposal. Additionally, the liquids-solids separation process yields a higher quality drilling fluid with less solids suspended in the liquid, which allows for faster drilling and reduces the abrasive wear on downhole equipment.  The environmental solutions division of the business provides a similar solution for industries such as construction, horizontal directional drilling, remediation, industrial, agricultural and municipal.  Many of the same cost-saving benefits and efficiencies realized by oilfield customers are also captured by customers in industrial applications where fluid recycling, reduced waste disposal and environmental factors are important.

15.     The Debtors' operations are conducted in: (A) two (2) offices in Alberta, Canada and (B) five (5) offices in the United States (two (2) field offices in Texas, one (1) field office in each of North Dakota and Pennsylvania, and a corporate office in Houston, Texas).  The Debtors

have approximately 21 employees in Canada (who are employed by BOS Ltd.) and approximately 181 employees in the United States (who are employed by BOS Inc.).

16.     Until October 2019, BOS Ltd.'s treasury and finance operations including its Chief Financial Officer were located in Calgary, Alberta.  In October 2019, the treasury and finance operations were relocated to Houston, Texas.  The U.S. operations are conducted through BOS Inc. which is headquartered in Houston, Texas.  All the Debtors' equipment is owned by BOS Ltd. (the Canadian parent company), and each Debtor maintains one or more bank accounts in Canada.

17.     While the Debtors have some unsecured trade debt, the majority of the Debtors' debt was incurred under the Canadian Credit Agreement.  The Canadian Credit Agreement is governed by the laws of the Province of Alberta and the laws of Canada applicable therein. (*See* Canadian Credit Agreement, section 12.4 (governed by Alberta law)).

**E.     Events Leading to the Commencement of the Canadian Proceedings**

18.     The Applicant for the Receivership Order is NBC.  NBC is the administrative agent (in such capacity, the "Agent") on behalf of itself and for and on behalf of a group of corporate entities, including National Bank of Canada, HSBC Bank Canada, ATB Financial, and The Toronto-Dominion Bank (collectively, and in such capacity, the "Lenders") pursuant to that certain Amended and Restated Credit Agreement, dated as of September 14, 2018 between BOS Ltd. and BOS Solutions Inc. (collectively, the "Borrowers"), as borrowers, BOS Leaseco, BOS Real Estate, and BOS Holdco (collectively, the "Guarantors"), as guarantors, NBC acting as Agent, and the Lenders, as lenders (the "Canadian Credit Agreement"). The Agent alleges that, as of April 24, 2020, the total indebtedness of the Borrowers to the Agent and the Lenders under the Canadian Credit Agreement is (a) USD $37,964,646.22 and CAD $6,136,261.11 plus (b) all legal and other costs and expenses incurred by the Agent (both prior to and following the date of the Originating Application) pursuant to the terms of the Canadian Credit Agreement, (collectively, the

"Indebtedness"). The Agent claims that the Indebtedness is secured by essentially all property of the Debtors.

### F.      The Canadian Proceedings

19.      After multiple events of default by the Debtors under the Canadian Credit Agreement, on May 4, 2020, NBC filed an Originating Application (Appointment of Receiver) in the Canadian Proceedings seeking the appointment of EY as receiver under section 243 of the BIA and section 13(2) of the Judicature Act, RSA 2000 c J-2.

20.      The applicable Canadian laws are discussed in the Declaration of Foreign Counsel attached to the Exhibits List.  The BIA is one of two pieces of federal legislation in Canada applicable to bankruptcies and insolvencies.[2] Bankruptcy and Insolvency Act, R.S.C. 1985, c. B-3 (Can.). The BIA governs both voluntary and involuntary bankruptcy liquidations and provides for debtor reorganizations.

21.      The BIA also authorizes a court to appoint a receiver upon a secured creditor's application.  *Id*. § 243(1). Such court-appointed receivers are given a mandate and specific powers as set out in the order appointing the receiver. These duties typically include: (1) taking possession and control of the property and assets of the debtor; (2) marketing and selling such property and assets in a commercially reasonable manner (whether as a going concern, en-bloc, or otherwise) and under the supervision and approval of the appointing court; and (3) distributing the proceeds of such sales to the stakeholders in accordance with the legal entitlement. The appointing court has

---

[2] The second federal legislation in Canada concerning bankruptcies and insolvencies is the Companies' Creditors Arrangement Act ("CCAA"), which affords financially troubled corporations the opportunity to restructure their financial affairs through a "Plan of Arrangement." Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 (Can.). The CCAA process is akin to chapter 11 of the Bankruptcy Code, affording companies an opportunity to restructure operations rather than liquidate. *See In re Fracmaster*, Ltd., 237 B.R. 627, 629 n.3 (Bankr. E.D. Tex. 1999).

broad discretion to authorize the receiver to "take any other action that the court considers advisable." *Id*. § 243(1)(c).

22.     A court-appointed receiver under the BIA is a "national" receiver, meaning that a receiver administers assets in each of Canada's ten (10) provinces and three (3) territories, typically without further order of provincial courts.  The BIA and its related legislation (the Companies' Creditors Arrangement Act) are federal legislation.  Provincial legislative jurisdiction governs property and civil rights, potentially affecting some insolvency-related matters, similar to the interplay between state and federal law in the United States.  Nonetheless, the BIA provides a statutory framework for a court-appointed receiver to carry out its mandate on a national basis rather than relying on the various provincial statutes or courts for its authority.

23.     The Judicature Act authorizes Canadian Courts to appoint a receiver when it is "just and convenient" on any terms and conditions the Canadian Court determines are just. Generally, the Judicature Act codifies broad equitable powers of the Court which allows it to provide for certain remedies where equitable, including the appointment of a receiver. The powers and duties of a receiver appointed by the Court pursuant to section 13(2) of the Judicature Act is set out in the order appointing the receiver and may be tailored to the specific circumstances. Generally, such powers and/or duties will be the same or similar to a receiver appointed under the BIA as noted above.

24.     On May 4, 2020, the Canadian Court, Honorable Justice P. R. Jeffrey, entered the Receivership Order pursuant to section 243 of the BIA and section 13(2) of the Judicature Act, RSA 2000 c J-2.  The Receivership Order specifically authorizes the Receiver to act "as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada." (Receivership Order ¶ 31). It empowers and

authorizes the Receiver to take numerous steps involving the property of the entities subject to the Canadian Proceeding. (Receivership Order ¶ 3). Likewise, the Receivership Order grants the Receiver access to all of the Debtors' books, records, contracts, securities, and information. (Receivership Order ¶¶ 4-6). Additionally, the Receivership Order imposes a stay of proceedings against the Receiver, the Debtors, or the Debtors' property similar to the protections available under 11 U.S.C. § 362(a). (Receivership Order ¶¶ 7-11).

25.     In the Receivership Order, the Canadian Court granted the Receiver a charge (the "Receiver's Charge") on all of the Debtors' current and future assets, undertakings, and properties of every nature or kind whatsoever, and wherever located, including all proceeds thereof (collectively, the "Property") to secure payment of the reasonable fees and expenses of the Receiver and its counsel, not to exceed $1,000,000 (or such greater amount as the Canadian Court may by further order authorize). (Receivership Order ¶ 18). The Receiver's Charge has the priority set forth in paragraph 18 of the Receivership Order.

26.     The Canadian Court also authorized the Receiver to borrow, by way of a revolving credit or otherwise, such monies from time to time as it may consider necessary or desirable, provided that the outstanding principal amount does not exceed CA $2,500,000 (or such greater amount as the Canadian Court may by further order authorize) on the terms set forth in paragraph 21 of the Receivership Order. (Receivership Order ¶ 21). The Canadian Court granted a charge (the "Receiver's Borrowings Charge") on the Property to secure payment of the monies borrowed, together with interest and charges thereon, by the Receiver pursuant to the Receivership Order. The Receiver's Borrowings Charge has the priority set forth in paragraph 21 of the Receivership Order.

27.     Consistent with section 14.06(1.2) of the BIA, the Receivership Order provides that "[t]he Receiver shall not be liable for any employee-related liabilities, including any successor employer liabilities . . . , other than such amounts as the Receiver may specifically agree in writing to pay, or in respect of its obligations under sections 81.4(5) or 81.6(3) of the BIA or under the *Wage Earner Protection Program Act* . . . ." (the "Receiver's Protections").  (Receivership Order ¶ 14).[3]

28.     The Receivership Order includes a request by the Canadian Court for "aid and recognition of any court . . . having jurisdiction in Canada or in any foreign jurisdiction . . ., to give effect to [the Receivership Order] and to assist the Receiver and its agents in carrying out the terms of [the Receivership Order]." (Receivership Order ¶ 30).

**G.     The Chapter 15 Cases**

29.     On May 4, 2020, the Receiver filed Official Form No. 401 Chapter 15 petitions for each of the Debtors pursuant to 11 U.S.C. § 1504, 1509(a) and 1515(a).

30.     Pursuant to the Receivership Order, the Receiver is a foreign representative in a foreign proceeding, and hereby seeks relief under Chapter 15 of the Bankruptcy Code.

**<u>RELIEF REQUESTED</u>**

31.     The Receiver hereby respectfully requests that this Court enter an order pursuant to Sections 105, 1507, 1517, 1520 and 1521 of the Bankruptcy Code, substantially in the form of the

---

[3] Section 14.06(1.2) of the BIA provides:
   Despite anything in federal or provincial law, if a trustee, in that position, carries on the business of a debtor or continues the employment of a debtor's employees, the trustee is not by reason of that fact personally liable in respect of a liability, including one as a successor employer,
   (a) that is in respect of the employees or former employees of the debtor or a predecessor of the debtor or in respect of a pension plan for the benefit of those employees; and
   (b) that exists before the trustee is appointed or that is calculated by reference to a period before the appointment.

proposed order attached hereto as **Exhibit A** (the "Proposed Order"), providing the following relief:

- Recognition of the Canadian Proceedings as a foreign main proceeding as defined in Section 1502(4) of the Bankruptcy Code;

- Granting the Receiver the relief afforded under Section 1520 of the Bankruptcy Code as is provided by right upon the recognition of the Canadian Proceedings as a foreign main proceeding;

- Granting further additional relief as authorized by Section 1521 of the Bankruptcy Code including, without limitation:

  - Staying the commencement or continuation of any action or proceeding concerning the assets, rights, obligations or liabilities of the Debtors, including any action or proceeding against EY in its capacity as Receiver of the Debtors, to the extent not stayed under Section 1520(a) of the Bankruptcy Code;

  - Staying execution against the assets of the Debtors to the extent not stayed under Section 1520(a) of the Bankruptcy Code;

  - Suspending the right to transfer or otherwise dispose of any assets of the Debtors to the extent not suspended under Section 1520(a) of the Bankruptcy Code by any person or entity other than the Receiver unless authorized in writing by the Receiver or by Order of this Court;

  - Granting comity to, and final recognition and enforcement of, the Receiver's Charge, the Receiver's Borrowing Charge, and the Receiver's Protections;

  - Providing that in accordance with sections 105(a), 345(b), and 363(c), the Debtors' existing cash management systems and procedures and the deposit agreements between the Debtors and their existing depository and disbursement banks (collectively, the "Banks") shall continue to govern the postpetition cash management relationship between the Debtors and the Banks;

  - Providing for the examination of witnesses, the taking of evidence, the production of documents, or the delivery of information concerning the assets, affairs, rights, obligations or liabilities of the Debtors, and finding that such information is required in the Canadian Proceedings under the law of the United States; and

  - Entrusting the administration or realization of all or part of the assets of the Debtors within the territorial jurisdiction of the United States to the Receiver;

- Otherwise granting comity to and giving full force and effect to the Canadian Court, the Canadian Proceedings, and the Receivership Order; and

- Awarding the Receiver such other and further relief as this Court deems just and appropriate.

32.     The Receiver respectfully submits that the Canadian Proceedings should be recognized as a foreign main proceeding as defined in section 1502(4) of the Bankruptcy Code. If, however, the Court determines the Canadian Proceedings are not foreign main proceedings (either in whole or in part), the Receiver seeks recognition of the Canadian Proceedings as a foreign nonmain proceeding, as defined in section 1502(5) of the Bankruptcy Code, and requests that the Court grant the relief requested above under the Court's discretion pursuant to section 1521 of the Bankruptcy Code.

## BASIS FOR RELIEF REQUESTED

### A.     Statutory Authority

33.     A Chapter 15 case is commenced when a foreign representative files a petition for recognition of a foreign proceeding under 11 U.S.C. § 1515. *See In re Oversight & Control Comm'n of Avánzit, S.A.*, 385 B.R. 525, 532 (Bankr. S.D.N.Y. 2008). Pursuant to section 1515(b) of the Bankruptcy Code, the recognition petition must be accompanied by certain documentary evidence which the court may presume to be authentic. 11 U.S.C. § 1516(b). The Court must grant the request for recognition if it finds:

> (1)     such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;
>
> (2)     the foreign representative applying for recognition is a person or body; and
>
> (3)     the petition meets the requirements of section 1515.

11 U.S.C. § 1517(a).

13

34.     A decision or certificate from a foreign court indicating the foreign proceeding is a "foreign proceeding," as defined in section 101(23) of the Bankruptcy Code, is presumptively correct. 11 U.S.C. § 1516(a). Similarly, a decision or certificate from a foreign court indicating that the foreign representative is a "foreign representative," as defined in section 101(24) of the Bankruptcy Code, is presumptively correct. *Id*.

35.     As stated above, (a) the Canadian Proceedings are foreign proceedings under the definition of 11 U.S.C. § 101(23), (b) the Receiver is a foreign representative under the definition of 11 U.S.C. § 101(24) and is a person under the definition of 11 U.S.C. § 101(41), and (c) the petition meets the requirements of Section 1515, namely, the evidence of the foreign proceedings and the foreign representative has been provided.[4] (*See* Receivership Order). Accordingly, the requirements for recognition of the Canadian Proceedings as foreign proceedings are met.

**B.      Rule Requirements for Recognition of the Canadian Proceedings**

36.     A petition for recognition of a foreign proceeding under Chapter 15 of the Bankruptcy Code shall state the country where the debtor has its center of main interests. FED. R. BANKR. P. 1004.2(a) (herein, the "Rule(s)"). The center of main interests for each of the Debtors is Alberta, Canada. This has been provided in the Debtors' Official Form 401 Petitions.

37.     The petition for recognition shall also identify each country in which a foreign proceeding by, regarding, or against the debtor is pending. *Id.* The Debtors are debtors in the foreign proceedings described in the Receivership Order. This information has also been provided in the Debtors' Official Form 401 Petitions.

38.     A foreign representative filing a petition for recognition under chapter 15 shall file with the petition a corporate ownership statement containing the information described in Rule

---

[4]  The term "person" includes individual, partnership, and corporation. 11 U.S.C. § 101(41).

7007.1. FED. R. BANKR. P. 1007(a)(4). Such a corporate ownership statement has been filed contemporaneously herewith.

39.     A foreign representative filing a petition for recognition under chapter 15 shall file with the petition (unless the court orders otherwise), a list containing the names and addresses of all persons or bodies authorized to administer foreign proceedings of the debtor, all parties to litigation pending in the United States in which the debtor is a party at the time of the filing of the petition, and all entities against whom provisional relief is being sought under section 1519 of the Bankruptcy Code. FED. R. BANKR. P. 1007(a)(4). A Rule 1007(a)(4) list has been filed contemporaneously herewith.

### C.     Requirements for a Petition for Recognition

40.     A petition for recognition shall be accompanied by any one of the following:

(1)     a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;

(2)     a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or

(3)     in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.

11 U.S.C. § 1515(b).

41.     Accordingly, in compliance with 11 U.S.C. § 1515(b), attached to the Debtors' petitions is the Receivership Order from the Canadian Proceedings, which may be presumed authentic. 11 U.S.C. § 1516(b).

      **D.**      **The Canadian Proceedings are Pending** "**Foreign Proceedings**"

42.     "Foreign proceeding" is defined in the Bankruptcy Code as "a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. § 101(23).

43.     The Canadian Proceedings fall squarely within the definition of "foreign proceeding." Prior to the passage of Chapter 15, United States courts recognized cases filed under Canada's federal bankruptcy and insolvency statutes, the BIA and the Companies Creditors Arrangement Act (the "CCAA"), to be "relating to insolvency." *See Tradewell, Inc. v. American Sensors Elecs., Inc.*, No. 96 CIV. 2474(DAB), 1997 WL 423075, at \*1, n. 1 (S.D.N.Y. July 29, 1997) (noting that the "CCAA is a broad statute, the purpose of which is to provide insolvent debtors with the opportunity to restructure their financial affairs with their creditors.") (internal quotations omitted). Moreover, since the passage of Chapter 15, cases filed under Canada's insolvency schemes have consistently been recognized as "foreign proceedings." *See, e.g., In re Calmena Energy Servs. Inc.*, No 15-30786, ECF No. 17 (Bankr. S.D. Tex. March 5, 2015) (Brown, J.) (recognizing Canadian BIA receivership proceeding as foreign proceeding); *In re Poseidon Concepts Corp.*, No. 13-15893, ECF No. 60 (Bankr. D. Colo. May 15, 2013) (recognizing a CCAA proceeding as a foreign proceeding); *In re Nortel Networks, Inc.*, 469 B.R. 478, 487 (Bankr. D. Del. 2012) (stating the Court had previously entered an Order recognizing the proceeding under the CCAA was a foreign main proceeding under chapter 15 of the Bankruptcy Code); *In re Metcalfe & Mansfield Alternative Invests.*, 421 B.R. 685, 688 (Bankr. S.D.N.Y. 2010) ("It is clear that the Canadian Proceedings should be recognized as a foreign main proceeding."); *In re Gandi Innovations Holdings, LLC*, 09-51782-C, 2009 WL 2916908, at \*1 (Bankr. W.D. Tex. June 5,

2009) ("[T]he CCAA Proceeding is a foreign proceeding entitled to recognition under Chapter 15 of the Code.").[5]  In addition, the United States Bankruptcy Court for the Northern District of Texas recently found that a Canadian receivership proceeding under section 243 of the BIA, RSC 1985 c B-3 and section 13(2) of the Judicature Act, RSA 2000 c J-2 was a "foreign proceeding" within the meaning of Section 101(23) of the Bankruptcy Code.  *See In re Eagle Energy Inc.*, Case No. 19-33868-15, ECF No. 35, ¶ J (Bankr. N.D. Tex. Dec. 5, 2019).

### E.    The Receiver Is a "**Foreign Representative**"

44.     Section 101(24) of the Bankruptcy Code defines "foreign representative" as "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding."

45.     The Receiver may serve as the "foreign representative" because it constitutes a "person or body." "Person" is defined under section 101(41) of the Bankruptcy Code to include an individual, partnership or corporation. 11 U.S.C. § 101(41). Because the Receiver is an incorporated entity, it therefore qualifies as a "person" and can accordingly serve as a "foreign representative." The Receiver has been specifically authorized in the Canadian Proceedings to act as the Debtors' foreign representative.  (Receivership Order ¶¶ 30-31). Additionally, the Receivership Order specifically states, "The Receiver be at liberty and is hereby authorized and

---

[5] For numerous other examples of U.S. courts recognizing Canadian insolvency proceedings as "foreign proceedings," *see In re ATK Oilfield Transportation Inc.*, No. 16-70042, ECF No. 44 (Bankr. W.D. Tex. Apr.19, 2016); *In re GasFrac Energy Servs., Inc.*, No. 15-50161, ECF No. 46 (Bankr. W.D. Tex. Feb. 2, 2014); *In re Angiotech Pharm., Inc.*, No. 11-10269, ECF No. 83 (Bankr. D. Del. Feb. 22, 2011); *In re Canwest Global Communications Corp.*, et al., No. 09-15994, ECF No. 30 (Bankr. S.D.N.Y. Nov. 3, 2009); *In re SemCanada Crude Co.*, No. 09-12637, ECF No. 30 (Bankr. D. Del. Aug. 27, 2009); *In re Quebecor World Inc.*, No. 08–13814, ECF No. 12 (Bankr. S.D.N.Y. July 1, 2009); *In re Biltrite Rubber (1984); Inc., et al.*, No. 09-31423, ECF No. 58 (Bankr. N.D. Ohio Apr. 2, 2009); *In re MAAX Corp.*, No. 08-11443, ECF No. 37 (Bankr. D. Del. Aug. 6, 2008); *In re Destinator Technologies, Inc.*, No. 08-11003, ECF No. 43 (Bankr. D. Del. June 6, 2008); *In re Innova Global Ltd.*, No. 19-10653, ECF 54 (Bankr. N.D. Okla. April 19, 2019).

empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order. . . ." (Receivership Order ¶ 31).

46.     The Court is therefore entitled to presume that the Receiver is a proper "foreign representative." *See* 11 U.S.C. § 1516(b). Additionally, Courts have previously considered a receiver appointed pursuant to section 243(1) of the BIA  to be a duly authorized "foreign representative**."** *See, e.g., In re Calmena Energy Services Inc.*, No 15-30786, ECF No. 17 (Bankr. S.D. Tex. March 5, 2015) (Brown, J.) (recognizing Canadian receivership proceeding as foreign proceeding); *In re ATK Oilfield Transportation Inc.*, No. 16-70042, ECF No. 44 (Bankr. W.D. Tex., April 1, 2016) (same); *In re Baronet U.S.A. Inc.*, No. 07-13821, ECF No. 15 (Bankr. S.D.N.Y. Jan. 1, 2008) (same);; *In re Innova Global Ltd.*, No. 19-10653, ECF 54 (Bankr. N.D. Okla. April 19, 2019) (same).

### F.     The Canadian Proceedings Should Be Recognized as Foreign Main Proceedings Because Canada is the Location of the Debtors' Center of Main Interests

47.     A foreign proceeding shall be recognized as a "foreign main proceeding" if it is pending in the country where the debtor has the center of its main interests. 11 U.S.C. § 1517(b). The term "center of main interests" ("COMI") is not defined in the Bankruptcy Code. COMI, however, has been equated with a debtor's principal place of business. *See Bear Stearns*, 374 B.R. 122, 129 (Bankr. S.D.N.Y. 2007) (citing *In re Tri-Continental Exchange Ltd.*, 349 B.R. 627, 633–34 (E.D. Cal. 2006)).

### G.     The COMI of the Debtors is Located in Canada Based Upon the Established COMI Factors

48.     There are five (5) non-exhaustive factors in determining a debtor's COMI: (1) the location of those who actually manage the debtor; (2) the location of the debtor's headquarters; (3)

the location of the debtor's primary assets; (4) the location of the majority of the debtor's creditors or the majority of creditors affected by the case; and (5) the jurisdiction whose law would apply to most disputes. *See Lavie v. Ran (In re Ran)*, 607 F.3d 1017, 1023 (5th Cir. 2010) (citing *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006) *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007)).

49.     The first factor, the location of those who manage the debtor, the "nerve center," or "principal place of business" of the Debtors, is inconclusive.  In determining COMI under Chapter 15, bankruptcy courts have utilized the "nerve center" test established in *Hertz Corp. v. Friend*, 559 U.S. 77 (2010). *See Hertz Corp. v. Friend*, 559 U.S. 77, 80–81, (2010) (nerve center is where the corporation's high level officers direct, control, and coordinate the corporation's activities); *In re Gandi*, 2009 WL 2916908, at *2 ("While the evidence regarding center of main interest is mixed, the court finds that the 'nerve center' for the [Debtors] is [in] Canada…the court concludes that, in these circumstances, the court should find that the center of main interests for [a Texas incorporated entity] should be Canada.") (Unpublished disposition); *In re Suntech Power Holdings Co.*, 520 B.R. 399, 416 (Bankr. S.D.N.Y. 2014) ("[T]he court may consider the location of the debtor's 'nerve center,' including from where the debtor's activities are directed and controlled, in determining a debtor's COMI."); *In re British Am. Isle of Venice, Ltd.*, 441 B.R. 713, 720 (Bankr. S.D. Fla. 2010) ("[I]n analyzing COMI courts have drawn a parallel to the 'nerve center' analysis described in [Hertz Corp.]").

50.     The Debtors' ultimate parent company, BOS Ltd., is a Canadian corporation. BOS Ltd. also conducts the Debtors' Canadian operations and owns all of the equipment used in the Debtors' operations.  Although the Debtors' executive level management were recently relocated to Houston, Texas, the Debtors, through BOS Ltd., maintain significant operations, assets, and

employees in three (3) offices in Canada. Thus, the Receiver submits that the first factor is inconclusive as to the location of the Debtors' COMI.

51.     Nonetheless, the four remaining factors indicate that the Debtors' COMI is in Canada. The Debtors have two (2) main offices in Alberta, Canada. As to the location of the Debtors' assets, this fact also favors Canada. All of the Debtors' equipment (the Debtors' primary asset) is owned by BOS Ltd. (the Canadian parent company), and each Debtor maintains one or more bank accounts in Canada. Further, as to the location of the majority of the Debtors' creditors or the majority of creditors affected by the case, while the Debtors have some unsecured trade debt, a majority of the Debtors' debt is the secured Indebtedness owed under the Canadian Credit Agreement. The Agent and the Lenders under the Canadian Credit Agreement are all based in Canada.

52.     The final factor, the jurisdictional law governing most disputes, favors Canada. As noted above, the majority of the Debtors' debt was incurred under the Canadian Credit Agreement. The Canadian Credit Agreement is governed by the laws of the Province of Alberta and the laws of Canada applicable therein. (*See* Canadian Credit Agreement, section 12.4 (governed by Alberta law)). Thus, Canadian law governs the majority of the Debtors' debt.

53.     Accordingly, the Receiver requests that the Canadian Proceedings be recognized as a foreign main proceeding. *See In re Ernst & Young, Inc.*, 383 B.R. 773, 781 (Bankr. D. Colo. 2008) (finding COMI in Canada notwithstanding the fact that two standards – the location of the debtors' creditors and applicable law – yielded inconclusive results); *In re Gandi*, 2009 WL 2916908, at *2 (finding mixed factors for COMI, but finding that as "nerve center" for Canadian debtor group was in Canada and Texas incorporated entity was controlled through Canada that COMI for entity was in Canada).

### H. Alternatively, the Canadian Proceedings Should be Recognized as Foreign Nonmain Proceedings

54.     In the event this Court does not recognize the Canadian Proceedings as foreign main proceedings, the Receiver submits that the Canadian Proceedings should be recognized as a foreign nonmain proceedings.

55.     The Canadian Proceedings shall be recognized as a foreign nonmain proceeding if the Debtors have an establishment in Canada. 11 U.S.C. § 1517(b)(2). "Establishment" is defined as any place of operations where the debtor carries out a nontransitory economic activity. 11 U.S.C. § 1502(2). When it is apparent that an entity conducts operations in the country where a foreign proceeding is pending, Courts will recognize the proceeding as a foreign nonmain proceeding if foreign main proceeding recognition is denied. *See e.g., SPhinX*, 351 B.R. at 122.

56.     Based upon the facts previously set forth, the Debtors hold an "establishment" in Canada, and therefore the Receiver alternatively submits that recognition as a foreign nonmain proceeding is warranted.

### <u>RELIEF RELATED TO RECOGNITION</u>

### A. Automatic Relief When a Foreign Proceeding is Main

57.     Certain relief is automatic when a foreign proceeding is recognized as main. 11 U.S.C. § 1520(a). Upon recognition of a foreign proceeding that is a foreign main proceeding—

> (1)    sections 361 and 362 apply with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States;
>
> (2)    sections 363, 549, and 552 apply to a transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States to the same extent that the sections would apply to property of an estate;
>
> (3)    unless the court orders otherwise, the foreign representative may operate the debtor's business and may exercise the rights and powers

of a trustee under and to the extent provided by sections 363 and
552; and

(4)     section 552 applies to property of the debtor that is within the
territorial jurisdiction of the United States.

11 U.S.C. § 1520(a).

58.     Accordingly, pursuant to 11 U.S.C. § 1520(a), the Receiver seeks such relief in the
Proposed Order attached hereto as **Exhibit A**.

### B.     Automatic Relief Whether or Not Foreign Proceeding is Main

59.     Certain relief is automatic upon recognition of a foreign proceeding, whether main
or nonmain. Upon recognition of a foreign proceeding, the foreign representative may intervene
in any proceedings in a State or Federal court in the United States in which the debtor is a party.
11 U.S.C. § 1524. Upon recognition of a foreign proceeding, the foreign representative has
standing in a case concerning the debtor pending under another chapter of this title to initiate
actions under sections 522, 544, 545, 547, 548, 550, 553, and 724 (a) of the Bankruptcy Code. 11
U.S.C. § 1523(a). Accordingly, the Receiver seeks such relief in the form of the Proposed Order
attached hereto as **Exhibit A**.

### C.     Discretionary Relief to Protect Creditors and the Debtors

60.     Certain discretionary relief is available upon recognition of a foreign proceeding
under 11 U.S.C. § 1521 as discussed below. The court may grant relief under section 1521 only if
the interests of the creditors and other interested entities, including the debtor, are sufficiently
protected. 11 U.S.C. § 1522(a). The Receiver contends that the discretionary relief requested is for
the protection of the creditors and the Debtors.

### D.     Discretionary Relief Whether or Not a Foreign Proceeding is Main

61.     "Any appropriate" discretionary relief is available upon recognition of a foreign
proceeding, whether or not a foreign proceeding is main.  11 U.S.C. § 1521(a) ("Upon recognition

of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief"). In granting relief under 11 U.S.C. § 1521 to a representative of a foreign nonmain proceeding, the court must be satisfied that the relief relates to assets that, under the law of the United States, should be administered in the foreign nonmain proceeding or concerns information required in that proceeding. 11 U.S.C. § 1521(c). That relief includes:

(1)  staying the commencement or continuation of an individual action or proceeding concerning the debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520(a);

(2)  staying execution against the debtor's assets to the extent it has not been stayed under section 1520(a);

(3  suspending the right to transfer, encumber or otherwise dispose of any assets of the debtor to the extent this right has not been suspended under section 1520(a);

(4)  providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities;

(5)  entrusting the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the foreign representative or another person, including an examiner, authorized by the court;

(6)  extending relief granted under section 1519(a); and

(7)  granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724 (a).

11 U.S.C. § 1521(a).

62.     In addition, under 11 U.S.C. § 1521(b), upon recognition of a foreign proceeding, whether main or nonmain, the court may entrust the distribution of all or part of the debtor's assets located in the United States to the foreign representative or another person, including an examiner, authorized by the court, provided that the court is satisfied that the interests of creditors in the

United States are sufficiently protected. Accordingly, the Receiver seeks the above relief in the Proposed Order attached hereto as **Exhibit A**.

### E.      Injunction Standards

63.     Certain relief under section 1521 of the Bankruptcy Code (the "1521 Relief") may require the application of standards for injunctive relief. The standards, procedures, and limitations applicable to an injunction may apply to relief under the following:

> 11 U.S.C. §§ 1521(a)(1)(concerning staying of proceedings not already stayed by section 1520(a));
>
> 1521(a)(2)(concerning staying execution against the debtor's assets to the extent it has not been stayed under section 1520(a));
>
> 1521(a)(3)(concerning suspending the right to transfer, encumber or otherwise dispose of any assets of the debtor to the extent this right has not been suspended under section 1520 (a)); and
>
> 1521(a)(6)(concerning extending relief granted under section 1519(a)).

11 U.S.C. § 1521(e).

### F.      Factors of Injunctive Relief

64.     The Receiver contends that it is not required that an adversary proceeding be filed and served on all parties in interest in order to obtain injunctive relief under chapter 15.  *In re Ho Seok Lee*, 348 B.R. 799, 801 (Bankr. W.D. Wash. 2006) (adversary proceeding not required for Chapter 15 injunctive relief).

65.     The factors for injunctive relief are stated in *Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*, 600 F.2d 1184, 1187 (5th Cir. 1979). They are discussed below.

66.     **A substantial likelihood of success on the merits**. The Receiver submits that it is likely to prevail in obtaining recognition of the Canadian Proceedings, as other courts have consistently recognized BIA proceedings where the proper documentation has been submitted. The Receiver also contends that the center of main interests is in Canada because, among other

24

reasons, the nerve center is in Canada. Accordingly, there is a substantial likelihood that the mandatory relief under section 1520 of the Bankruptcy Code will be ordered.

67.     Even if the Court does not find that the Canadian Proceedings are foreign main proceedings, the Receiver submits that the facts underlying these Chapter 15 cases support a finding that the Debtors have an establishment in Canada within the meaning of section 1502(2) of the Bankruptcy Code, and therefore, there is a substantial likelihood that the Court will recognize the Canadian Proceedings as foreign nonmain proceedings if the Court determines that the Canadian proceedings should not be recognized as foreign main proceedings. In the event the Canadian Proceedings are recognized as a foreign nonmain proceeding, the Receiver also submits that there is a substantial likelihood that the Court will determine that the relief requested in the Proposed Order is necessary to effectuate the purpose of Chapter 15 and to protect the assets of the Debtors or the interests of the Debtors' creditors pursuant to Section 1521(a) of the Bankruptcy Code.

68.     Discretionary relief under 11 U.S.C. § 1521 is routinely granted upon recognition of a foreign proceeding. For instance, courts commonly approve stays,[6] approve debtor-in-possession financing,[7] and apply section 365 of the Bankruptcy Code.[8]  Furthermore, a grant of discretionary relief under section 1521 of the Bankruptcy Code would promote uniformity in the administration and disposition of the Debtors' assets and would be consistent with the policies underlying the Bankruptcy Code. *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999

---

[6] *See, e.g., Collins v. Oilsands Quest Inc.*, 484 B.R. 593, 596-97 (S.D.N.Y. 2012); *see also In re Calmena Energy Svcs. Inc.*, No. 15-30786 (Bankr. S.D. Tex. Mar. 5, 2015), ECF No. 17.

[7] *See, e.g., In re Essar Steel Algoma Inc.*, No. 15-12271 (Bankr. D. Del. Dec. 2, 2015), ECF No. 100; *In re Crystallex Int'l Corp.*, No. 11-14074 (Bankr. D. Del. Apr. 26, 2012), ECF No. 111; *In re Biltrite Rubber (1984) Inc.*, No. 09-31423 (Bankr. N.D. Ohio Apr. 2, 2009), ECF No. 58; *In re Rock Well Petroleum Inc.*, No. 08-20802 (Bankr. D. Wy. Feb. 9, 2009), ECF No. 70.

[8] *See, e.g., Essar Steel Algoma*, No. 15-12271 (Bankr. D. Del. Dec. 2, 2015), ECF No. 100; *In re Newsat Ltd.*, No. 15-10810 (Bankr. D. Del. May 29, 2015), ECF No. 113; *In re Qimonda AG*, No. 09-14766 (Bankr. E.D. Va. Nov. 19, 2009), ECF No. 180.

(5th Cir. 1985) (stating that "promoting uniformity in bankruptcy administration" is a goal of bankruptcy adjudication, in the context of a motion to withdraw the reference); *see also In re Vitro S.A.*, 701 F.3d 1031, 1044 (5th Cir. 2012) (stating that "one of Chapter 15's goals [is] the furtherance of cooperation between domestic and foreign courts in cross-border insolvency cases."). Accordingly, the Receiver believes that it has a substantial likelihood of being granted the requested discretionary relief under 11 U.S.C. § 1521. *See, e.g., In re Rede Energia* S.A., 515 B.R. 69, 91-92 (Bankr. S.D.N.Y. 2014) ("Chapter 15 thus provides courts with broad, flexible rules to fashion relief that is appropriate to effectuate the objectives of the chapter in accordance with comity."); *Gandi Innovations*, 2009 WL 2916908 at *2 ("The court finds that it is necessary to effectuate the purposes of this chapter and to protect the assets of the debtor and the interests of creditors by granting appropriate relief [under section 1521]").

69.     **A substantial threat of irreparable injury if the injunction is not issued**. It is the Receiver's intention to continue operations of the Debtors for a period of time so that the assets may ultimately be sold as a going concern.  As such, the Receiver needs to stabilize operations and operate in the normal course, including paying employees and ongoing expenses. If the Receiver's authority is not honored in the U.S., or if creditors or parties in interest take collection actions or exercise self-help, the ordinary course operations of the Debtors and the ability of the Receiver to effectuate a sale of assets could be jeopardized.  *See, e.g., In re Netia Holdings S.A.*, 278 B.R. 344, 352 (Bankr. S.D.N.Y. 2002) ("It is well established . . . that the dissipation of the finite resources of an insolvent estate constitutes irreparable injury."); *In re MMG, LLC*, 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000) ("[I]rreparable harm exists whenever local creditors of the foreign debtor seek to collect their claims or obtain preferred positions to the detriment of other creditors."). The

Receivership Order provides for a stay against seizure of assets and litigation similar to the automatic stay of 11 U.S.C. § 362(a).

70.     Furthermore, the Receiver's Charge, the Receiver's Borrowings Charge, and the Receiver's Protections that were approved by the Canadian Court are necessary to the Receiver's uninterrupted operation of the Debtors' business.  Absent these protections, the Receiver will be unable to fund the Debtors' operations and maintain the Debtors' employees, resulting in a shutdown of the Debtors' business.  Thus, the Provisional Relief is necessary on an immediate basis to protect against potential destruction of asset value, disruption to business operations, and interference with the Receiver's sale efforts that would result from the Debtors' liquidity constraints and the exercise of remedies by lenders, contract counterparties, and others pending entry of a final order; absent this relief, the Debtors' estates will suffer irreparable harm. Accordingly, the failure to grant the 1521 Relief subjects the Debtors to a substantial threat of irreparable injury, all to the detriment of the Debtors, their estates, and their creditors.

71.     **That the threatened injury to the movant outweighs any damage the injunction might cause to the opponent**. Any threatened injury to the Debtors outweighs any damage the injunction might cause to the opponents. The 1521 Relief, if granted, would actually benefit the Debtors' creditors by ensuring an orderly distribution of assets and facilitate the Canadian Proceedings, including the contemplated sale.  *See, e.g., In re Basis Yield Alpha Fund (Master)*, Case No. 07-12762 (Bankr. S.D.N.Y. Aug. 29, 2007), Doc. No. 5 (stating that failing to issue a restraining order against creditors could, *inter alia*, "undermine the Foreign Representative's efforts to achieve an equitable result for the benefit of all of the Foreign Debtor's creditors.").

27

72.     **That the injunction will not disserve the public interest**. The 1521 Relief will not disserve the public interest. To the contrary, the 1521 Relief is in the public interest because it sets to facilitate a cross-border reorganization that will provide a benefit to the creditors of the Debtors.  *See, e.g., Cunard S.S. Co. Ltd. v. Salen Reefer Svcs. A.B.*, 773 F.2d 452, 458 (2d Cir. 1985) ("The granting of comity to a foreign bankruptcy proceeding enables the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion.").

73.     In sum, the relief sought is necessary and appropriate, in the interest of the public and international comity, consistent with the United States public policy, and will not cause any hardship to any party in interest that is not outweighed by the benefits of granting the requested relief. In the event that the Court finds that the Canadian Proceedings are foreign nonmain proceedings, the relief requested herein is still appropriate because the relief is discretionary.  *See* 11 U.S.C. § 1521 ("Upon recognition of a foreign proceeding, whether main or nonmain . . . the court may, at the request of the foreign representative, grant any appropriate relief . . . .").  The Receiver submits that the Court should exercise its discretion in this matter to assure an economical, expeditious, and equitable administration of the Debtors' estates. Without such relief, the Debtors will be exposed to the risk of voluminous litigation and other actions against the estates, their assets and the Receiver in the United States, which would result in a "race to the courthouse" among creditors and other parties in interest, and thus, threaten the Receiver's efforts to maximize the Debtors' estates for the benefit of the Debtors' creditors.

**G.     No Bond**

74.     The Receiver respectfully suggests that no bond be required under Fed. R. Bankr. P. 7065 and Fed. R. Civ. P. 7065(c). A temporary restraining order or preliminary injunction may be issued on application of a debtor, trustee, or debtor in possession without compliance with Rule

65(c). FED. R. BANKR. P. 7065. The Receiver, who is carrying out his duties under the BIA, the Judicature Act, and the Receivership Order, is akin to a trustee, and any bond would necessarily come from the Debtors' assets.

### H.  Comity

75.    If the court grants recognition, and subject to any limitations that the court may impose consistent with the policy of Chapter 15, a court in the United States shall grant comity or cooperation to the foreign representative. 11 U.S.C. § 1509(b)(3). Consistent with section 1501 of the Bankruptcy Code, the court shall cooperate to the maximum extent possible with a foreign court or a foreign representative, either directly or through the trustee. 11 U.S.C. § 1525(a). Accordingly, the Receiver seeks comity and cooperation of this Court with respect to the Canadian Court and its Receivership Order.

76.    A central tenet of Chapter 15 is the importance of comity in cross-border insolvency proceedings. *Ad Hoc Group of Vitro Noteholders v. Vitro SAB De CV (In re Vitro SAB De CV)*, 701 F.3d 1031, 1053 (5th Cir. 2012). The Supreme Court defined comity as follows:

> "Comity," in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.

*Hilton v. Guyot*, 159 U.S. 113, 143 (1895); *see also Vitro* 701 F.3d at 1043-44.

77.    The exceptions to comity are construed especially narrowly when the foreign jurisdiction is like Canada, a sister common law jurisdiction with procedures akin to those in the United States. *Clarkson Co. v. Shaheen*, 544 F.2d 624, 630 (2d Cir. 1976) (finding that clear and convincing evidence of fraud is required to successfully attack a foreign judgment; the court held that it would contravene the public policy of New York and the doctrine of comity not to recognize

the Canadian judgment in these circumstances); *see also In re Petition of Davis*, 191 B.R. 577, 587 (Bankr. S.D.N.Y. 1996) (stating that "Courts in the United States uniformly grant comity to Canadian proceedings" and noting that Canada is a sister common law jurisdiction with the United States).

78.     The extension of comity to Canadian orders has continued since the 2005 enactment of Chapter 15. *See In re Metcalfe & Mansfield Alternative Invs.*, 421 B.R. at 698-99 (extending comity to Canadian CCAA order providing for a third party release and citing numerous cases where American courts have extended comity to Canadian judgments); *Raymond Chabot Inc. v. Serge Cote Family Tr. & Pub. Storage*, No. 6:14-CV-03392-MGL, 2014 WL 4198831, at \*3, n.1 (D.S.C. Aug. 22, 2014) (entering temporary restraining order assisting Canadian bankruptcy receiver and noting "the widely-accepted view that Canadian judgments are entitled to recognition and enforcement here"); *Collins v. Oilsands Quest, Inc.*, 484 B.R. 593, 597 (S.D.N.Y. 2012)(bankruptcy court enforced Canadian court stay from in CCAA noting "the question here is not whether this Court should grant a stay in the first instance, but whether should accord comity and deference to the stay orders entered by the Alberta Court. The Court concludes that in light of the comity principles laid out above, the Court must defer to the procedures set forth in the Canadian Proceedings and enforce the stay.").  Accordingly, the Receiver requests that the Court grant comity to, and final recognition and enforcement of, the Receivership Order.

79.     Moreover, the Bankruptcy Court for the Southern District of Texas has recognized the importance of comity in chapter 15 proceedings.  *See* Guidelines for Communication and Cooperation between Courts in Cross-Border Insolvency Matters, General Order 2019-2 (the "Cross-Border Guidelines").  For example, the Cross-Border Guidelines provide that: "The overarching objective of these Guidelines is to improve in the interests of all stakeholders the

efficiency and effectiveness of cross-border proceedings relating to insolvency. . .by enhancing coordination and cooperation among courts under whose supervision such proceedings are being conducted."  The Cross-Border Guidelines then include a non-exhaustive list of guidelines to promote efficient coordination with the foreign court, protect stakeholders' interests, preserve the debtor's assets, and to share information to reduce costs, among others.

## BASIS FOR EMERGENCY RELIEF

80.     Pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first twenty-one (21) days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm," and Local Rule 9013-1(i), the Receiver respectfully request emergency consideration of this motion.  Contemporaneously with the filing of this Petition, the Receiver has filed the *Receiver's Emergency Ex Parte Application for Temporary Restraining Order and Relief Pursuant to Sections 105(a) and 1519 of the Bankruptcy Code* (the "TRO Application").  The Receiver has requested emergency consideration of the TRO Application.  If granted, the relief requested in the TRO Application would only extend for the first fourteen (14) days of these Chapter 15 cases.  Accordingly, the Receiver requests consideration of the Petition on less than twenty-one (21) days' notice so that the Receiver can obtain an extension of any relief granted in connection with the TRO Application and continued legal authority and control over the Debtors' assets located in the United States so as to avoid loss and to maximize the potential return to creditors.  Furthermore, "[a] petition for recognition of a foreign proceeding shall be decided upon at the earliest possible time." 11 U.S.C. § 1517(c).

## CONCLUSION

81.     The Receiver respectfully requests that this Court recognize the Canadian Proceedings as foreign main proceedings, and grant the relief requested herein. The Receiver

alternatively requests recognition as foreign nonmain proceedings, and that the Court grant the relief requested herein.

Dated:  May 5, 2020
Houston, Texas

        Respectfully submitted,

        **HAYNES AND BOONE, LLP**

        By:  */s/ Charles A. Beckham, Jr.*
              Charles A. Beckham, Jr.
              Texas State Bar No. 02016600
              charles.beckham@haynesboone.com
              Kelli S. Norfleet
              Texas State Bar No. 24070678
              kelli.norfleet@haynesboone.com
              1221 McKinney Street, Suite 2100
              Houston, Texas 77010
              Telephone.: (713) 547-2000
              Facsimile: (713) 547-2600

              -and-

              Sally L. Dahlstrom
              Texas State Bar No. 24092314
              sally.dalstrom@haynesboone.com
              2323 Victory Avenue, Suite 700
              Dallas, TX  75219
              Telephone: (214) 651-5000
              Facsimile: (214) 651-5940

              **ATTORNEYS FOR CANADIAN RECEIVER**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that contemporaneously with the filing of the foregoing, I directed noticing agent Stretto to serve a copy of the foregoing on parties in interest in this case. The Receiver will supplement this certificate of service with proof of service and a copy of such service list.

*/s/ Charles A. Beckham, Jr.*
Charles A. Beckham, Jr.